IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA'

| | | |
|---|---|---|
| RONDA COTTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-810-SM |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Ronda Cotten (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Doc. 17. Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court reverses and remands the Commissioner's decision.

**I.   Administrative determination.**

   **A.   Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 17-23; *see* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step analysis). Specifically, the ALJ found Plaintiff:

> (1) was severely impaired, first, status-post cardiovascular accident/transient ischemic attack with left-sided weakness,

second, by subarachnoid cyst, third by migraine syndrome, fourth by remote history of congestive heart failure, fifth by mood disorder, sixth by depression, seventh by anxiety, and eighth by mild cognitive disorder;

(2)   did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3)   had the residual functional capacity (RFC)[1] to perform light work with the following with no more than occasional lifting up to twenty pounds, no more than the frequent lifting or carrying up to ten pounds, standing/walking six hours out of an eight-hour workday, sitting six hours out of an eight-hour workday, no more than the frequent handling, fingering, or feeling with the left non-dominant upper extremity, and no exposure to temperature or humidity extremes or wetness; she can understand, remember, and carry out simple instructions consistent with unskilled work that is repetitive and routine in nature and can relate and interact with co-workers and supervisors on a work-related basis only with no minimal interaction with the general public; she can adapt to a work situation with these limitations/restrictions and her medication would not preclude her from remaining reasonably alert to perform required functions presented in a work setting;

(4)   could not perform any past relevant work;

(5)   could perform jobs that exist in significant numbers in the national economy, such as small products assemble, inspector/hand packer, document specialist, and touch-up screener; and so,

(6)   had not been under a disability, as defined in the Social Security Act, from June 1, 2012 through the February 11, 2015, the date of the ALJ's decision.

AR 19-30.

---

[1]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

### D. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision. *Id.* at 1-6; s*ee Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on

4

technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)). The ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

B. **Plaintiff's claims of error.**

Plaintiff argues (1) although the ALJ "gave great weight to [Plaintiff's] treating physician, [he] failed to explain his reasons for not adopting all" of that opinion's work-related restrictions; and (2) "failed to consider [Plaintiff's] obesity." Doc. 16, at 6-10. In response, the Commissioner maintains the ALJ satisfied his duties noting "Plaintiff's limitations . . . were unsupported by various factors, including not only . . . favorable objective medical evidence, but also Plaintiff's noncompliance with treatment, her inconsistent reports to physician as to effectiveness of treatment, and her daily activities. . . ." Doc. 24, Att. 2, at 8. As to obesity, the Commissioner notes Plaintiff neither alleged this impairment in her applications for benefits nor at the hearing, and alleged no obesity-related cardiovascular metabolic, or musculoskeletal disorders. *Id.* at 9.

5

## C. Analysis.

The Commissioner does not dispute Plaintiff's severe migraine syndrome. Doc. 24, Att. 2, at 3. With respect to this impairment, the ALJ summarized Dr. Ortiz-Cruz's assessments: "severe headache, most likely due to complicated migraine, triggered by the excessive use of nicotine and caffeine among other risk factors." AR 26. Plaintiff's "pain episodes [are] apparently triggered by occipital neuralgias/cervical pain, which appeared to be caused by stress," and that "[c]ervical pain[] probably worsen[s her] headaches. . . ." *Id.* at 27.

> Later, in reviewing the opinion evidence, the ALJ stated:
>
> As for the opinion evidence, Dr. Ortiz-Cruz is a neurologist, who has treated the claimant since 2011. Her neurological exam was normal in 2014 with no changes in the MRI of the brain. This physician indicated that her headaches were triggered by nicotine and caffeine. The claimant was not being compliant. *Dr. Ortiz-Cruz's opinion is given substantial weight (Exhibits 4F, 6F, 8F, 9F and 10F).* Dr. Root is the claimant's treating physician. He was basically treating other issues, which were mild. He also instructed the claimant to quit smoking and lose weight (Exhibits 5F and 7F). Dr. Lynch performed a consultative psychological evaluation and assessed the claimant with mild cognitive disorder. *His opinion is given considerable weight as consistent with the overall record (Exhibit 3F).* Dr. Trbovic is a psychiatrist who saw the claimant only a couple of times. She told this psychiatrist that her medications were not helping. This is not what she told Dr. Ortiz-Cruz and Dr. Root. The claimant testified that he went down the form and asked the claimant each question, thus it is the same as subjective testimony and given little weight (Exhibits 11F and 12F). Medical consultants with Disability Determination Services (DDS); assessed the claimant with non-severe physical

6

> impairments of migraines and degenerative disc disease. She was able to perform most household chores and participate in activities with her family. Mentally, the claimant was assessed with affective disorders, with the ability to perform simple and some complex tasks; relate to others of a superficial work basis and adapt to a work situation. DDS is given some weight, however, the undersigned has assessed the claimant with significantly more restrictions, but with jobs still available (Exhibits 3A, 4A, 7A and 8A).

*Id.* at 28 (emphases added).

Earlier in his opinion, the ALJ noted Dr. Ortiz-Cruz's physical medical source statement included certain symptoms including "pain, dizziness, fatigue, weakness and depression." *Id.* at 26. As a result, Plaintiff suffered various side effects and limitations, including the need to sit in a recliner or lie down due to migraine headaches, as needed. *Id.* at 26, 453. And, as the ALJ noted, Dr. Ortiz-Cruz indicated Plaintiff "would have good and bad days and her productivity would be 75 percent or less, and she would miss more than four days per [month] of work." *Id.* at 26, 454. This shows Plaintiff's "problems were so functionally limiting as to prevent her from engaging in any substantial gainful activity." Doc. 24, Att. 2, at 3-4; *see also id.* at 5-6 ("Plaintiff reported having only two to three mild headaches weekly and two to three major ones monthly . . . .").

Here, the ALJ violated the treating-physician rule. This rule requires that when weighing a treating physician's opinion, the ALJ must "complete a

7

sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. The initial determination the ALJ must make is whether the treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id*. "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id*. The ALJ failed to make this determination. But, by giving the opinion substantial weight, the ALJ implies he gave it some controlling weight. AR 28. Yet the ALJ did not try to explain why he did not address Dr. Ortiz-Cruz's significant restrictions.

"Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. "If this is not done, a remand is required." *Id*. Here, the ALJ's failure to indicate why he rejected certain of the limitations set forth in Dr. Ortiz-Cruz's opinion does not suffice to satisfy *Krauser*'s requirements.

The Commissioner argues the ALJ adequately explained his rejection of these limitations, in that the "ALJ . . . expressly stated that Plaintiff's

8

limitations *to the extent alleged* were unsupported by various factors, including not only the . . . favorable objective medical evidence, but also Plaintiff's noncompliance with treatment, her inconsistent reports to physicians as to effectiveness of treatment, and her daily activities." Doc. 24, Att. 2, at 8 (emphasis added). This turns Plaintiff's contention and the ALJ's conclusions on their respective heads: Dr. Ortiz-Cruz's opinion included these restrictions in her opinion. AR 453. The Commissioner only addresses "Plaintiff's limitations to the extent alleged . . . .," which implies only her subjective limitations. Doc. 24, at 8. The ALJ separately discounted Plaintiff's subjective testimony but never addressed Dr. Ortiz-Cruz's specific limitations regarding the need to sit in a recliner or lie down, and the need to miss at least four days of work each month. AR 27, 28.

While the court agrees the ALJ gave Dr. Darrell Lynch's assessment of "mild cognitive disorder" "considerable weight," *id.* at 28, and that Plaintiff's physicians repeatedly instructed her to lose weight and quit smoking, *id.* at 26, 27, 28, these conclusions cannot overcome the above treating-physician error. Similarly, though Dr. Ortiz-Cruz's "**repeated** findings" may have been inconsistent with the above two restrictions, the ALJ never acknowledged this to be the case. Doc. 24, Att. 2, at 8. To do so now would be an unsupportable post-hoc rationalization. *Carpenter*, 537 F.3d at 1267. And though, as the

9

Commissioner points out, "[i]t is error to give an opinion controlling weight if it is inconsistent with the other substantial evidence in the record," the ALJ neither elaborated as to whether Dr. Ortiz-Cruz's opinion was controlling nor noted any inconsistencies.

Regarding Plaintiff's assertions regarding obesity, the court agrees Plaintiff did not list obesity on her initial disability applications and did not raise obesity as an issue during the hearing before the ALJ, at which she was represented. *See e.g.*, AR 194-96, 200, 202, 37-65. The law nonetheless requires the ALJ to consider obesity when documented in the record. *See, e.g., Fagan v. Astrue,* 231 F. App'x 835, 837 (10th Cir. 2007) (citing SSR 02-1p, 2002 WL 34686281); *Love v. Colvin*, No. 14-1078-JWL, 2015 WL 1530599, at *2 (D. Kan. Apr. 6, 2015) ("[W]hile there is a requirement that obesity be considered and that it be considered in combination with other impairments, there is no requirement that it be *discussed* in a particular manner or at a particular time in a disability decision."); *but see Wall*, 561 F.3d at 1062 (instructing that an ALJ is generally entitled to "rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," in finding that the ALJ exercised good judgment in "refusing to delve more deeply into the mental impairments Claimant now emphasizes on appeal") (citation omitted). On remand, the ALJ should consider the

documentation of Plaintiff's obesity in the record and whether Plaintiff has "point[ed] to any medical evidence indicating her obesity resulted in functional limitations." *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015).

### III. Conclusion.

The court reverses and remands the Commissioner's decision.

ENTERED this 9th day of March, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE